FRANK R. LaMUSGA AND DOROTHEA G. LaMUSGA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
La Musga v. Commissioner
Docket No. 7412-81.
United States Tax Court
T.C. Memo 1982-742; 1982 Tax Ct. Memo LEXIS 4; 45 T.C.M. (CCH) 422; T.C.M. (RIA) 82742; December 29, 1982. *4 Held, respondent's determination upheld on the ground that P's farming activity was not an activity engaged in for profit pursuant to sec. 183. A. H. Michals, for the petitioners. Dale Newland, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION
*5 WHITAKER, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: 1977
$11,817.49
1978
12,450.17
Petitioners have conceded the disallowance of automobile expense in the two years and have agreed with respondent that the investment credit disallowance and recapture adjustments are proper if the Court should find for respondent on the sole issue remaining: whether petitioners' farm activity was not engaged in for profit pursuant to section 183. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. It has been stipulated that petitioners are husband and wife and resided in Minneapolis, Minnesota, at the time this petition was filed. Petitioners filed joint income tax returns for the years in issue. However, as we are uncertain of the degree to which Mrs. LaMusga participated in the farming activity, and as she did not appear at trial, for convenience "petitioner" hereafter refers to Mr. LaMusga. Petitioner was born and raised on a farm approximately 135 miles north-northwest of *6 Minneapolis. In 1950, at the age of 22, petitioner left the farm for the city, and since 1958 has operated his own manufacturing business. Petitioners reported $103,970 in 1977 and $271,538.90 in 1978 from this business, and reported combined gross income before farm losses of $111,114.58 in 1977 and $278,441.59 in 1978, the years in issue. At the time petitioner left home, his father advised him that land offered the best and most stable form of investment. In 1968, petitioner purchased a 160-acre farm located near the farm on which he was raised. The farm, whose soil and buildings were in a state of neglect, cost $17,500. Petitioner intended to hold the farm and to sell it when he retired for its anticipated appreciated value to provide funds for his retirement. Petitioner was approximately 40 years old at the time he purchased the farm. At that time, petitioner had no plans for the utilization of the farm other than a vague notion about attempting to rehabilitate the neglected soil. Prior to purchasing the farm, petitioner did not conduct studies, seek expert advice, or otherwise investigate the feasibility of establishing a profitable operation on the farm. Based on *7 these facts and also upon petitioner's testimony and the record as a whole, we find that petitioner purchased and held the land primarily with the intent to profit from an increase in its value. The parties stipulated that the farm was leased by oral agreement to petitioner's brother, Anthony, from 1968 to 1974, but based on the record we find the farm was rented to unidentified third parties in 1968 and 1969. Accordingly, the oral lease began in 1970, after petitioner's brother expressed his discontent with life in the city. Thereafter, the farm was leased to petitioner's brother and organized as a hog raising operation, which was later expanded to include beef cattle. Petitioner's brother was not an experienced farm manager. Petitioner arranged the lease to his brother without investigating farm rental arrangements typically followed in this part of Minnesota, without attempting to discover the fair market rental value of the farm, to advertise, or to obtain a lessee other than his brother. The oral agreement neither included nor contemplated any formal arrangement as to the amount of rent that was to be paid. Petitioner received $343.48 in 1968, which was apparently *8 a share of the corn raised on the farm that year, and cash rent of $294 in 1969. Petitioner's brother paid no rent in 1970 or 1971 and $3,501 cash rent each year in 1972, 1973 and 1974. In January 1975, petitioner and his brother executed a five-year written lease of the farm and equipment for $2,800 and $3,200 per year, respectively. The parties intended that these figures would reflect an unspecified percentage of farm income to be realized during the term of the lease, based on receipts and expenses from the previous years. The parties did not take into account the value of petitioner's investment in the farm or equipment. [2]
During the term of the written lease, petitioner spent $68,360.46 on additional farm equipment, $39,632 on new and improved animal shelter facilities and other farm structures, $7,600 on a new silo used to *9 store corn raised to feed the hogs, and $60,000 on a neighboring farm. Although these expenditures totaling $163,442 were made specifically to be incorporated into lessee's farming operation, petitioner did not seek to modify the lease. As to the neighboring farm which was purchased in 1977 to raise corn for lessee's hogs, petitioner and lessee orally agreed that lessee would pay an unspecified amount of rent after the harvest if farm income proved sufficient. Petitioner received no cash rent in any year of the written lease except for $1,250 in 1978, but received 6 percent promissory notes payable on demand in lieu of rent in 1975, 1976 and 1977. Petitioner has made no effort to collect on these notes, or to terminate the lease. Petitioner does not expect to collect rent unless and until the farm operation produces sufficient income. Lack of farm income was due in some degree to the conditions of a generally depressed farming industry. Rents under the lease represent petitioner's sole income from the farming operation for the years in issue. Due to petitioner's direct reliance on the profitability of the farm operation for the amount and collectability of rent, his sole source *10 of income from the farm, we find that petitioner bore a substantial burden of the risk of the farming operation. Petitioner spent his weekends on the farm and regularly performed acts of farm labor such as planting corn, tilling and harvesting chores, repairing equipment, operating heavy farm equipment, and building and improving farm buildings. Petitioner apparently excluded from the lease a corn planter and a disk which, at least some of the time, he used personally. Petitioner frequently advised his brother on farm matters and due to his brother's lack of experience found it necessary to maintain a high degree of managerial control over the operation. We find on these facts that petitioner personally participated to a substantial degree in the farming operation.
Petitioner was unable to verify the extent to which he sought and relied upon expert advice, or the extent to which he conducted soil sample tests and changed farming methods or strategy thereon. Petitioner did not conduct tests of or maintain agricultural productivity records. Between 1968 and 1981, at which time this petition was filed, petitioner reported farm losses on his Federal income tax return in each *11 year, generally increasing in amount from one year to the next, and totaling $181,756.91, including for the years in issue, $17,410.32 in 1977 and $21,631.90 in 1978. Had petitioner collected rent in full under the lease, he would still have reported farm losses in each year, including for the years in issue, $11,410.32 in 1977 and $15,631.90 in 1978. Deductions attributable to the farming activity which were not directly attributable to the holding of the land did not exceed income attributable to the farming activity for the years in issue, or for any years of the 13-year period except 1973 and 1974. ULTIMATE FINDING OF FACT Petitioner bore to a substantial degree the risk of, and participated to a significant extent in, the farming operation. We therefore find as an ultimate fact that petitioner was "engaged in farming" [3] but that he did not have a profit objective in being so engaged. *12 OPINION Section 183 provides that in the case of an activity not engaged in for profit, the taxpayer is allowed (1) those deductions allowable regardless of whether the activity is engaged in for profit [4] plus (2) to the extent of gross income from the activity in excess of the deductions allowed above (1), those deductions which would be allowable under sections 162 and 212 were the activity engaged in for profit. Respondent disallowed petitioner's farm losses on the grounds that they were attributable to an activity not engaged in for profit pursuant to section 183. The regulations under section 183 set forth nine factors which are to be applied in determining whether an activity is not engaged in for profit. Section 1.183-2(b), Income Tax Regs. These factors are: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; *13 (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on similar and dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. These factors are not exclusive and are to be applied according to the unique facts of each case. Accordingly, no one factor, nor a majority of nine factors, need be considered determinative. Golanty v. Commissioner,72 T.C. 411, 426-427 (1979); Benz v. Commissioner,63 T.C. 375 (1974). To be certain, the decision in this case is a difficult one. Petitioner was a credible witness and it is clear that he expended considerable time, effort and money on the farm. However, such facts are not necessarily inconsistent with a conclusion that the farm was not operated with a profit objective, and viewing objectively all the facts and circumstances before us, we clearly *14 identify the characteristic elements of a prototypal hobby farm: a combination of large losses over a number of years, substantial income from other sources, tax benefits, and personal motivations directing the manner in which the activity is conducted. See, e.g., Golanty v. Commissioner,supra.[5]
Petitioner was employed full-time in Minneapolis. The fact that one is able to devote only limited time to an activity need not be considered indicative of a lack of a profit motive where one employs competent and qualified persons to carry on the activity. Section 1.183-2(b)(3), Income Tax Regs. Petitioner, however, chose to lease the farm to his brother, who was not an experienced farm manager, apparently because his brother was discontented with life in the city. Further, petitioner arranged the lease so that in fact if not in form the amount of rent, petitioner's sole source of income from the farm, was directly dependent upon the success *15 of his inexperienced brother in producing income on a neglected farm in a depressed industry. Petitioner arranged the lease without reference to the farm's fair market rental value. See sections 1.183-2(b)(1), 1.183-2(b)(2), Income Tax Regs. During the term of the written lease, petitioner spent large sums of money on new equipment, farm structures and acquired an additional farm for use by his brother. Petitioner, however, never sought to modify the lease. Thus, even were petitioner to have collected full rent ($30,000) instead of the $1,250 he received under the lease, he would have reported farm losses in each year. See sections 1.183-2(b)(6), 1.183-2(b)(7), Income Tax Regs.Nor has petitioner sought to collect unpaid rent, cancel the unprofitable lease, or obtain a more experienced farm manager or lessee. See section 1.183-2(b)(1), Income Tax Regs.However laudable, petitioner's leniency towards his brother strongly indicates his lack of a profit objective. Section 1.183-2(b)(9), Income Tax Regs.; Jasionowski v. Commissioner,66 T.C. 312 (1976). *16 A record of substantial losses over many years is an important factor bearing on the taxpayer's true intention. Section 1.183-2(b)(6), Income Tax Regs.; Golanty v. Commissioner,supra at 426; Jasionowski v. Commissioner,supra at 322. Even conceding the fact of a generally depressed farming industry, we cannot fashion an explanation consistent with a profit objective as to why petitioner, an experienced and highly successful businessman, faced with the depressed industry and large, increasing losses over a 13-year period, did not at some point radically change his method of operation. Petitioner did not prepare for the activity by studying accepted business, economic and scientific practices. He was unable to document the extent to which he consulted with or relied upon experts' advice during the 13-year period. Neither did he maintain records of farm productivity in a manner consistent with an intent to improve profitability. See sections 1.183-2(b)(1), 1.183-2(b)(2), Income Tax Regs. It is difficult to believe that petitioner could have followed such poor business practices in his successful manufacturing *17 business. Section 1.183-2(b)(6), Income Tax Regs.
Large losses are especially indicative of a lack of profit objective when the taxpayer has substantial income from other sources, particularly if the losses from the activity generate tax benefits and there are personal elements involved. Section 1.183-2(b)(8), Income Tax Regs. Substantial other source income and tax benefits are facts of this case, as are the personal elements evident in petitioner's lenient lease to his brother. In addition, we are unable to conjecture why petitioner, successfully employed full-time 135 miles away from the farm, would choose to spend his weekends in a dilapidated farm house doing farm labor and raising hogs if there was not a strong element of recreation or personal pleasure. The crux of petitioner's argument is that he expected to derive an overall profit from the operation due to the appreciation in value of the land.[6] This is but one of nine or more factors we look to, so that even were we to concede petitioner this point, it alone probably would *18 be insufficient to overcome the other largely conclusive facts and circumstances we have discussed. In any event, we find that this factor does not apply in the present case. First, petitioner made no attempt to determine the value of his land at any point prior to his preparation for this trial or to make studies on which to predict future farm income or loss. What *19 could therefore have been at best but a vague and unauthenticated notion that the land was appreciating in value does not constitute a bona fide expectation that appreciation would be sufficient to recoup all past and future losses, as we read section 1.183-2(b)(4), Income Tax Regs., to require. Nor did petitioner make any attempt to ascertain the effect of the farming operating on the appreciation of the land. See sections 1.183-2(b)(1), 1.183-2(b)(2), Income Tax Regs.We do not interpret section 1.183-2(b)(4), Income Tax Regs., to allow a taxpayer to avoid section 183 and deduct large losses simply by virtue of conducting an unprofitable activity on a piece of land that is appreciating independently of or in spite of the activity. As we noted in Tarutis v. Commissioner,T.C. Memo. 1982-313: * * * carrying on the farm operation did not assist in maintaining the land, and if the petitioners' objective was to realize a profit from the appreciation in the value of the land, they could have better realized such objective *20 by discontinuing the farming operation. Certainly, the expected profit from the sale of the land did not warrant the continuation of the grossly unprofitable farming operation. See also Hambleton v. Commissioner,T.C. Memo. 1982-234; Pickering v. Commissioner,T.C. Memo. 1979-243. [7]
Our conclusion is borne out by the regulations. Section 1.183-2(b)(4), Income Tax Regs., cross-refers to section 1.183-1(d)(1) to determine whether the *21 holding of land and the farming of the land constitutes a single or separate activity. Section 1.183-1(d)(1) provides, in relevant part: Where land is purchased or held primarily with the intent to profit from increase in its value, and the taxpayer also engages in farming on such land, the farming and the holding of the land will ordinarily be considered a single activity only if the farming activity reduces the net cost of carrying the land for its appreciation in value. Thus, the farming and holding of the land will be considered a single activity only if the income derived from farming exceeds the deductions attributable to the farming activity which are not directly attributable to the holding of the land (that is, deductions other than those directly attributable to the holding of the land such as interest on a mortgage secured by the land, annual property taxes attributable to the land and improvements, and depreciation of improvements to the land). As income derived from the farming did not exceed deductions attributable thereto for the years in issue, or for any years other *22 than 1973 and 1974, the holding and farming of the land were separate activities and we do not consider petitioner's expectation of the land's appreciation as a factor bearing on whether the farming was an activity engaged in for profit. We do not pedantically apply, one by one, the nine factors suggested by section 1.183-2(b), Income Tax Regs., to determine the outcome of this case, but nonetheless note that the facts indicate the lack of a profit objective in each instance. Moreover, we are confident that in the context of all the objective facts and circumstances before us, that this experienced and successful businessman did not demonstrate a sufficiently businesslike approach to an obvious financial problem that continued for 13 years. The nature of petitioner's leasing arrangement, his willingness to sustain large losses over a period of 13 years, his substantial income from other sources and the tax benefits implicated thereby are the objective facts on which we rely most heavily. Accordingly, petitioner has failed to demonstrate the existence of a profit objective. Petitioner does not argue, nor do we think that the losses at issue are attributable *23 to his holding of the land for its increase in value. Therefore, we need not address whether petitioner has conducted this separate activity with the requisite intent to profit. Rather, we find that losses attributable to farm costs such as feed, equipment, insurance and the depreciation of farm structures are attributable to the section 183 farming activity. Section 1.183-1(d)(2), Income Tax Regs.; Riss v. Commissioner,56 T.C. 388 (1971); Hambleton v. Commissioner,supra.
Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. At the time the lease was executed, petitioner's total investment in the farm and equipment, ignoring depreciation in machinery and facilities, inflation increases, if any, and the appreciation (if any) in the value of the land, was $125,771. The agreed rental, $6,000 per year, represents 4.76 percent per annum return on the cash outlay.↩
3. For instances in which these factors have been applied in determining whether an individual is "engaged in farming" for Federal income tax purposes see Maple Leaf Farms, Inc. v. Commissioner,64 T.C. 438 (1975). See also secs. 1.61-4(d), 1.175-3, 1.180-1(b), 1.183-2, Income Tax Regs.; Hi-Plains Enterprises, Inc. v. Commissioner,60 T.C. 158 (1973), affd. 496 F.2d 520 (10th Cir. 1974); United States v. Chemell,243 F.2d 944 (5th Cir. 1957); Duggar v. Commissioner,71 T.C. 147 (1978); Cameron v. Commissioner,T.C. Memo. 1982-259. See also Fageol v. Commissioner,↩ a Memorandum Opinion of this Court dated April 30, 1951.
4. See, for example, sec. 1.183-1(b), Income Tax Regs.↩
5. See also S. Rept. 552, 91st Cong., 1st Sess. (1969), 1969-3 C.B. 423↩, 489-490.
6. Sec. 1.183-2(b)(4), Income Tax Regs., provides that: (4) Expectation that assets used in activity may appreciate in value. The term "profit" encompasses appreciation in the value of assets, such as land, used in the activity. Thus, the taxpayer may intend to derive a profit from the operation of the activity, and may also intend that, even if no profit from current operations is derived, an overall profit will result when appreciation in the value of land used in the activity is realized since income from the activity together with the appreciation of land will exceed expenses of operation. See, however, paragraph (d) of § 1.183-1↩ for definition of an activity in this connection.
7. We, therefore, distinguish this case on its facts from that in which the intent to make a profit from an activity is integrally dependent upon the appreciation of the asset caused by the conduct of the activity, and in which the taxpayer maintains careful records upon which he relies when investing money in the activities to cause the asset's appreciation. An example is a horse breeder whose expenditures are made in direct reliance on carefully maintained records which indicate that such expenditure might be justified by the appreciation in the value of a horse, a bloodline or the reputation of the breeder.See, e.g., Engdahl v. Commissioner,72 T.C. 659↩ (1979).