COOK, Circuit Judge.
Losantiville Country Club hosted unprofitable nonmember events for many years, consistently using those losses to avoid paying tax on its investment income. Because the Internal Revenue Service determined that Losantiville did not hold nonmember events for the primary purpose of making a profit, the club could not offset its income from investments with losses from those nonmember activities. Invalidating those deductions resulted in Losantiville having underpaid tax on its unrelated business income between 2010 and 2012. Plus, the IRS imposed accuracy-related penalties. On appeal, the Tax Court upheld this determination, reasoning that Losantiville did not intend to profit from its nonmember events. We AFFIRM.
I. BACKGROUND
Losantiville is a private country club in Ohio operating as a Section 501(c)(7) tax-exempt organization. Section 501(c)(7) allows "individuals to join together to provide recreational or social facilities or other benefits on a mutual basis, without tax consequences." Portland Golf Club v. Comm'r , 497 U.S. 154, 162, 110 S.Ct. 2780, 111 L.Ed.2d 126 (1990) (quoting S. Rep. No. 91-552, at 71 (1969) ).
Like other social clubs, Losantiville derives income from several sources: membership dues and member-expenditures on food and drink, facility rentals to nonmembers, and interest and dividends on club investments. These last two sources of income are taxable as unrelated business income, because the 501(c)(7) exemption *471 "operates properly only when the sources of income of the organization are limited to receipts from the membership." Id. ; see I.R.C. § 501(b).
Between 2002 and 2015, Losantiville hosted nonmember events to generate additional revenue and attract new members. Gross receipts from these events always exceeded direct expenses (the cost of the services provided). But every year, the club reported a net loss after deducting the indirect expenses (general operating costs) attributable to the nonmember sales.
Year Gross Direct Gross Profit Indirect Net Loss Receipts Expenses Expenses 2002 365,703 (68,629) 297,074 (329,411) (32,337) 2003 257,751 (51,467) 206,284 (246,495) (40,211) 2004 183,076 (38,113) 144,963 (169,445) (24,482) 2005 174,062 (59,503) 114,559 (248,225) (133,696) 2006 153,748 (55,141) 98,607 (229,627) (131,020) 2007 144,556 (50,353) 94,203 (216,074) (121,871) 2008 228,135 (90,140) 137,995 (318,031) (180,036) 2009 125,388 (45,948) 79,440 (214,153) (134,713) 2010 168,448 (64,703) 103,745 (216,110) (112,365) 2011 137,953 (51,134) 86,819 (180,343) (93,524) 2012 184,745 (60,109) 124,636 (224,158) (99,522) 2013 218,654 (65,223) 153,431 (264,924) (111,493) 2014 226,302 (62,911) 163,391 (299,021) (135,630) 2015 216,361 (66,699) 149,662 (273,376) (123,714)
Generally, a social club may deduct losses from nonmember activities against other taxable gains under I.R.C. § 162(a) so long as those activities are "trade[s] or business[es]." Because profit motive is the most important indicia of a trade or business, the Supreme Court requires a social club to first prove that it intended to profit from an activity before deducting Section 162 losses from that activity. Portland Golf Club , 497 U.S. at 164-65, 110 S.Ct. 2780 ; I.R.C. § 162 ; see also Comm'r v. Groetzinger , 480 U.S. 23, 35, 107 S.Ct. 980, 94 L.Ed.2d 25 (1987).
Between 2010 and 2012, Losantiville offset its reported investment income with these losses under Section 162 and avoided paying any income tax.
Year Investment Income Unrelated Business Taxable Income 2010 30,723 (81,642) 2011 7,274 (86,250) 2012 7,340 (92,182)
Eventually, Losantiville's streak of losing money on its nonmember sales and consistent deductions under Section 162 drew scrutiny. In 2013, the Commissioner declared that the club did not intend to profit from its nonmember sales, could not deduct those losses under Section 162, and therefore owed unrelated business income tax on its investment income. In addition, the Commissioner assessed accuracy-related penalties.
Losantiville disputed both findings in Tax Court. First, the club argued that the Commissioner focused too closely on Losantiville's lack of profitability. Losantiville insisted that the "intent to profit" inquiry involves more than just mechanically computing whether the club made money on its nonmember events. Instead, it asked *472 the Tax Court to look at another portion of the Code for guidance-the nine "hobby loss" factors in Section 183 that courts use to distinguish recreational hobbies from businesses "engaged in for profit." I.R.C. § 183 ; Treas. Reg. § 1.183-1. The Tax Court rejected this, assessing the Section 183 factors as inapplicable to 501(c)(7) organizations, and opining that Losantiville must actually profit to prove that it intended to profit.
Second, Losantiville defended against the accuracy-related penalties through reliance on its tax professional's preparation of the club's returns. According to the Tax Court though, Losantiville failed to prove that its "preparers had sufficient expertise to justify reliance, that petitioner provided them with necessary and accurate information, or that petitioner relied in good faith on the preparers' judgment." Losantiville Country Club v. Comm'r , 114 T.C.M. (CCH) 198 (2017). Losantiville and its accountants even conceded that they knew about Portland Golf Club -the Supreme Court case that the Tax Court viewed as foreclosing all of Losantiville's arguments.
II. ANALYSIS
Losantiville's appeal raises two issues. First, whether the Tax Court correctly interpreted Portland Golf Club as requiring profitability to evidence an intent to profit, and whether it erred by rejecting Losantiville's arguments that other evidence could overcome the absence of profitability. Second, whether the court clearly erred when it rejected Losantiville's reasonable cause defense and sustained the Commissioner's assessment of penalties for the club's underpayment of tax. We review the Tax Court's interpretation and application of law de novo, and its factual findings for clear error. Indmar Prods. Co. v. Comm'r , 444 F.3d 771, 777 (6th Cir. 2006).
A. Profit Motive
Although Losantiville booked losses for thirteen consecutive years on its nonmember events, it claims that a holistic review of its business practices reveals its intent to profit. Had the Tax Court considered the nine factors listed in the Treasury Regulations under Section 1.183-2, the club argues, it would have decided that the club operated with a valid profit motive. Treas. Reg. § 1.183-2. The Tax Court, however, read Portland Golf Club as instructing that "[t]o prove its intent to profit, [Losantiville] must establish that its gross receipts from nonmember sales exceeded the direct and indirect costs relating to these sales." Losantiville Country Club , 114 T.C.M. (CCH) 198.
Though the Tax Court interpreted the Supreme Court's recent decision in Portland Golf Club as requiring a showing of profitability, that was not quite right. The Court held that a Section 501(c)(7) exempt social club may offset investment income from loss from nonmember sales "only if the nonmember sales were undertaken with an intent to profit." 497 U.S. at 171, 110 S.Ct. 2780. The Tax Court's reading misses the Court's clarification: "[a] taxpayer's intent to profit is not disproved simply because no profit is realized during a particular year." Id. at 171 n.22, 110 S.Ct. 2780. A club "could offset these losses against investment income if it could demonstrate that it intended to earn gross income in excess of total costs." Id.
The Section 183"Hobby Loss" Factors May Establish Profit Motive
The Tax Court also summarily rejected Losantiville's contention that the Section 183 factors may establish profit motive. We understand the Tax Court's discomfort with importing the Section 183 factors into an analysis of a tax-exempt social club's *473 profit motive. This provision applies generally to high-earning taxpayers attempting to reduce their tax liability by reporting losses from extravagant "side jobs," such as horse-breeding or auto racing. Because taxpayers may deduct losses from an activity against other income only if they intended to profit from the activity or are running a business, see I.R.C. §§ 162, 212, the IRS uses the nine factors listed in Treasury Regulation § 1.183-2(b) to distinguish between for-profit activities eligible for Section 162 or Section 212 deductions, and not-for-profit hobbies limited to deductions under Section 183. Among other things, these factors ask whether the taxpayer has another major source of income, keeps complete books and records, seeks advice from an expert, and previously succeeded in similar ventures. Treas. Reg. § 1.183-2(b).
Although Portland Golf Club confirmed that a taxpayer can hurdle the intent-to-profit requirement without showing consistent profitability, it only hinted at other acceptable indicia. In one footnote, the Court explained how Portland could have demonstrated an intent to profit by referencing the Section 183 factors. 497 U.S. at 171 n.22, 110 S.Ct. 2780. In another, the Court noted that these factors do not apply to nonprofit social clubs. Id. at 164 n.15, 110 S.Ct. 2780 ; see also Treas. Reg. § 1.183-1(a) (noting that "[n]o inference is to be drawn from" either Section 183 or its associated regulations that "any activity of a corporation (other than an electing small business corporation) is or is not a business or engaged in for profit"). Despite this tension, courts have allowed the principles from Section 183 to guide their profit motive analyses. See, e.g. , Atlanta Athletic Club v. Comm'r , 61 T.C.M. (CCH) 2011 (1991), rev'd on other grounds , 980 F.2d 1409 (11th Cir. 1993). And the Commissioner conceded during oral argument that because courts must consider more than just profitability when evaluating whether a club intended to profit, Section 183 factors could illuminate that intent.
Helpfully, other courts have wrestled with this question in analogous situations, deploying the Section 183 factors even when they are inapplicable because they offer a functional metric for distinguishing deliberately unprofitable businesses from those merely ineptly run. See, e.g. , Westbrook v. Comm'r , 68 F.3d 868, 882 (5th Cir. 1995) ("The great weight of legal authority holds that profit motive is determined by weighing all the facts and circumstances, using the nine factors of Treas. Reg. § 1.183-2(b)."); Cannon v. Comm'r , 949 F.2d 345, 348 (10th Cir. 1991) (collecting cases where courts apply the Section 183"profit motive" factors to analyses under Section 162 ); Brannen v. Comm'r , 722 F.2d 695, 704 (11th Cir. 1984) ("Although Section 183 technically does not come into play until after it has been determined that the activity in question was not being carried on for a profit within the meaning of Section 162, the courts have relied upon the factors set forth in Section 183 in making the requisite profit motive analysis under Section 162."); Keating v. Comm'r , 544 F.3d 900, 904 (8th Cir. 2008) (same).
Importantly, any error in the Tax Court discounting those factors on this factual record is harmless. As explained below, the record here offers no support for finding an intent to profit.
Losantiville Cannot Demonstrate a Profit Motive
We now address the factual issue of whether Losantiville demonstrated a profit motive. Newmyer v. Philatelic Leasing, Ltd. , 888 F.2d 385, 394 (6th Cir. 1989). Ordinarily this court would review for clear error. Saunders v. Comm'r , 75 F. App'x 494, 496 (6th Cir. 2003). But because *474 the Tax Court misread Portland Golf Club as wholly dependent on demonstrating profitability, it had no occasion to evaluate whether evidence other than the club's chronic unprofitability might demonstrate an intent to profit.
When a lower court fails to apply the correct legal standard, the appropriate remedy is to remand the case to the trial court for reconsideration. See Pullman-Standard v. Swint , 456 U.S. 273, 292, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). But in the small subset of cases where "the record permits only one resolution of the factual issue," id. ,"such a remand would be a waste of judicial resources," Estate of Hill v. Miracle , 853 F.3d 306, 317 (6th Cir. 2017). See also Reynolds v. Giuliani , 506 F.3d 183, 197 (2d Cir. 2007) ("[I]f the evidence before us admits only a single resolution of the controlling issue, remanding the case serves no useful purpose."). Because the record here is complete and presents only uncontested facts, and those facts plainly permit only one conclusion, we may resolve this issue ourselves. See id.
True, demonstrating profit motive without profitability proves difficult. Such taxpayers generally must show that their intent to profit was thwarted somehow. See Portland Golf Club , 497 U.S. at 171 n.22, 110 S.Ct. 2780. When an organization is consistently unprofitable, even tougher. Compare Hendricks v. Comm'r , 32 F.3d 94, 99 (4th Cir. 1994) (farm lost money for twenty out of twenty-one years and provided no evidence that these losses were attributable to unforeseen or fortuitous circumstances), with Faulconer v. Comm'r , 748 F.2d 890, 900-01 (4th Cir. 1984) (farm's substantial losses did not preclude a court from finding a profit motive where losses were attributable to the unforeseeable injuries to several racing horses).
Although courts review holistically all relevant facts and circumstances when deciding whether an activity is a business or hobby, a long history of consistent and unexplained losses can overwhelm all other factors. See, e.g. , Dodge v. Comm'r , 75 T.C.M. (CCH) 1914 (1998), aff'd , 188 F.3d 507 (6th Cir. 1999) (horse breeders were unable to prove intent to profit when they lost ten times as much money as they made over twelve years, and "the record reveals that the massive losses were not the result of startup expenses"); Purdey v. Comm'r , 58 T.C.M. (CCH) 947 (1989), aff'd , 922 F.2d 833 (3d Cir. 1990) (mounting losses over a twenty-year period and a lack of credible evidence that the taxpayer could ever realistically expect to recover losses demonstrated that petitioner did not intend to profit); W. Va. State Med. Ass'n v. Comm'r , 882 F.2d 123, 125 (4th Cir. 1989) (advertising company that lost substantial amounts of money in twenty out of twenty-one years could not demonstrate a profit motive because it "failed to explain why it consistently incurred losses that could have been avoided by simply discontinuing the advertising activity").
Losantiville never adduced any evidence that it attempted to stem its flood of losses, or that it expected to eventually profit. Instead, Losantiville asks this court-as it petitioned the Tax Court-to consider just two of the nine Section 183 factors: the businesslike way the club planned and conducted the nonmember events, and the appreciation of its land.
Businesslike approach : Losantiville assures this court that it deployed experienced and qualified professionals to plan every nonmember event, maintain books and records, create monthly reports detailing the "nature, income, costs and profits of nonmember activities," and review financial statements. But the Section 183 factors rely on objective indicia to ferret *475 out the truth behind any bluster; the club cannot satisfy this factor by touting that its "goal with every nonmember event [wa]s to turn a profit." "[T]he keeping of books and records may represent nothing more than a conscious attention to detail" when there is "no showing that books and records were kept for the purpose of cutting expenses, increasing profits, and evaluating the overall performance of the operation." Golanty v. Comm'r , 72 T.C. 411, 430 (1979), aff'd , 647 F.2d 170 (9th Cir. 1981). The club cited no concrete evidence that it adopted any "new techniques" or abandoned "unprofitable methods in a manner consistent with an intent to improve profitability." Treas. Reg. § 1.183-2(b)(1).
Land appreciation : Similarly, Losantiville never demonstrated that it owns real estate "primarily with the intent to profit from increase in its value," or that its nonmember events "reduce[ ] the net cost of carrying the land for its appreciation in value." Treas. Reg. § 1.183-1(d). The IRS allows taxpayers to aggregate deductions and income from separate activities only if they show that the undertakings are sufficiently interconnected. Treas. Reg. § 1.183-1(d). For example, "[w]here land is purchased or held primarily with the intent to profit from increase in its value, and the taxpayer also engages in farming on such land, the farming and the holding of the land will ordinarily be considered a single activity only if the farming activity reduces the net cost of carrying the land for its appreciation in value." Id. ; see also Giles v. Comm'r , 91 T.C.M. (CCH) 684 (2006) (accounting for a taxpayer's land appreciation during a profit motive analysis because the property stood "at the center of [her] horse[-breeding] activity"-she housed, trained, bred, and fed her horses there). Taxpayers cannot "avoid section 183 and deduct large losses simply by conducting an unprofitable activity on a piece of land that is appreciating independently of or in spite of the activity." LaMusga v. Comm'r , 45 T.C.M. (CCH) 422 (1982) ; see also Boddy v. Comm'r , 47 T.C.M. (CCH) 1381 n.6 (1984), aff'd , 756 F.2d 884 (11th Cir. 1985) ("An unsuccessful farming operation cannot be carried on forever simply because the price of land in that general area is rising.").
B. The Penalty
The Internal Revenue Code imposes a mandatory twenty percent accuracy-related penalty on any negligent or intentional tax underpayment. I.R.C. § 6662(b)(1). The Code excuses this penalty if a taxpayer proves they have "reasonable cause" for the underpayment and acted in "good faith." Id. at § 6664(c)(1). The taxpayer bears this burden. Mortensen v. Comm'r , 440 F.3d 375, 385 (6th Cir. 2006).
When the Commissioner determined that Losantiville did not intend to profit from its nonmember sales, he assessed accuracy-related penalties. The Tax Court upheld these penalties and rejected Losantiville's assertions that it had reasonable cause: "Petitioner's 2010, 2011, and 2012 returns were prepared by professionals. There is no evidence, however, that the preparers had sufficient expertise to justify reliance, that petitioner provided them with necessary and accurate information, or that petitioner relied in good faith on the preparers' judgment." Losantiville Country Club , 114 T.C.M. (CCH) 198. In fact, the Tax Court noted that Losantiville "stipulated that it and its accountants were aware of the Portland Golf Club [ ] precedent" whose result, according to the Tax Court, clearly dictated that Losantiville was underpaying tax. We review for clear error the Tax Court's determination that Losantiville did not act in good faith or *476 with reasonable cause when it deducted nonmember losses against its investment income. Kerman v. Comm'r , 713 F.3d 849, 867 (6th Cir. 2013).
Relying on a tax professional : In certain circumstances, a taxpayer can defeat a negligence penalty by proving reliance on his accountant's advice. Tollis v. Comm'r , 46 F.3d 1132 (6th Cir. 1995). But "the reliance itself must be objectively reasonable": the taxpayer must have "supplied the professional with all the necessary information to assess the tax matter" and the accountant cannot "suffer from a ... lack of expertise that the taxpayer knew of or should have known about." Neonatology Assocs., P.A. v. Comm'r , 299 F.3d 221, 234 (3d Cir. 2002) (citing Treas. Reg. § 1.6664-4(c) ). Courts decide whether a taxpayer acted with reasonable cause and in good faith on a "case-by-case basis, taking into account all pertinent facts and circumstances." Treas. Reg. § 1.6664-4(b)(1).
Losantiville offers no persuasive argument for finding the Tax Court's conclusion clearly erroneous. The club produced no evidence that its reliance was objectively reasonable or in good faith; it submitted no opinion letters, and no correspondence detailing advice or suggestions that its accountants provided. The record reflects that Losantiville conveyed its own opinions about the club's tax obligations to its accountants, not that the accountants ever evaluated Losantiville's position. "The mere fact that a certified public accountant has prepared a tax return does not mean that he or she has opined on any or all of the items reported therein." Neonatology Assocs., P.A. v. Comm'r , 115 T.C. 43, 100 (2000), aff'd , 299 F.3d 221 (3d Cir. 2002).
Legal justification : Losantiville also contends that because it advocated for a novel "application of existing law," its interpretation of Portland Golf Club provided reasonable cause for any underpayment. But reasonable cause exists only if a taxpayer's decision to take an unauthorized deduction is buttressed by "substantial authority." I.R.C. § 6664(d)(3)(B). The authority may be factual or legal-or even ultimately prove meritless-as long as it is "considerable" and not overwhelmed by "contrary legal authority." Estate of Kluener v. Comm'r , 154 F.3d 630, 639 (6th Cir. 1998).
For example, in Estate of Kluener , we noted that Kluener underpaid tax when he transferred several horses to his closely-held corporation, sold them, then impermissibly returned the "tax-free" proceeds to his personal accounts. Id. at 632. During our penalty analysis, we nevertheless credited the "[c]onsiderable factual evidence" that Kluener initially transferred the horses for a "valid, non-tax business purpose." Id. at 639. We also acknowledged that "several cases" supported similar reshuffling of assets and differentiated any contradictory holdings. Id. In contrast, Losantiville marshalled virtually no evidence supporting its arguments for underpayment even under its argument for a novel application of Portland Golf Club .
Because Losantiville's authority fails both on the merits and as a defense of reasonable cause and good faith, the Tax Court did not clearly err when it rejected Losantiville's reasonable cause defense and sustained the accuracy-related penalties.
III. CONCLUSION
In the absence of a showing of error in the Tax Court's judgment, we AFFIRM.