RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0087p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellant*,

*v.*

BO BRYANT HOSTETTLER,

        *Defendant-Appellee.*

No. 24-3403

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Akron.
No. 5:23-cr-00654-1—J. Philip Calabrese, District Judge.

Decided and Filed:  March 20, 2026

Before:  STRANCH, READLER, and BLOOMEKATZ, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:**  James A. Ewing, Brenna L. Fasko, Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellant.  Stephen C. Newman, Catherine Adinaro Shusky, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

BLOOMEKATZ, Circuit Judge.  A grand jury indicted Bo Hostettler for possessing a gun as a felon, in violation of a federal statute.  *See* 18 U.S.C. § 922(g)(1).  Hostettler moved to dismiss the indictment, arguing that the statute was unconstitutional both facially and as applied.  The district court granted Hostettler's motion on the grounds that the federal statute was unconstitutional as applied to him.  Since then, intervening circuit precedent has clarified the legal standard that governs constitutional challenges to firearm regulations.  Accordingly, we

vacate and remand with instructions to apply the legal standard consistent with current circuit precedent when considering Hostettler's motion to dismiss.

## BACKGROUND

Prior to the indictment in this case, Hostettler was convicted of possessing a gun as a felon in May 2019 and sentenced to 48 months in prison. *See* 18 U.S.C. § 922(g)(1). About a year into his supervised release, Hostettler absconded and law enforcement issued a warrant for his arrest. When officers found Hostettler, he had a firearm, which violated the terms of his supervised release. A grand jury indicted him for possessing a gun as a felon, in violation of 18 U.S.C. § 922(g)(1), leading to the subject of this appeal.

Hostettler moved to dismiss the indictment, arguing that § 922(g)(1) was unconstitutional both facially and as applied to him under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). The district court interpreted *Bruen* to "place[] the burden on the United States to justify restricting the fundamental constitutional right that the Second Amendment secures." D. Ct. Op., R. 15, PageID 109. Additionally, in accordance with our law at the time, the district court considered only Hostettler's felony record, as opposed to the entirety of his criminal record, and did not take account of Hostettler's status on supervised release. Finding that the government failed to carry its burden, and therefore, that § 922(g)(1) was unconstitutional as applied to Hostettler, the district court dismissed the indictment.

The government timely appealed. While this appeal was pending, our circuit issued a new opinion governing Second Amendment challenges to firearm regulations. Hostettler asked us to remand his case to allow the district court to apply the governing standard. We declined, concluding that remand was unnecessary "at [that] juncture," and allowed the appeal to continue in the usual course. Order Denying Remand, D. 32, p. 3. With full briefing on the parties' appellate arguments, we now consider the government's appeal.

## ANALYSIS

This court clarified the governing standard for evaluating Second Amendment challenges to firearm regulations after the district court considered Hostettler's motion. We first turn to

describing the new framework before considering the parties' arguments in light of the intervening precedent.

## I.      Second Amendment Framework

Hostettler challenges § 922(g)(1) under *Bruen*, which establishes the analytical framework for Second Amendment challenges.  To determine whether a firearm regulation passes constitutional muster, we first consider whether the "Second Amendment's plain text covers an individual's conduct" by asking whether the defendant is part of "the people" and if the "right" they assert is one "to keep and bear Arms." *Bruen*, 597 U.S. at 24, 31–32. If so, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24, 33–34.  With respect to this second step of the inquiry, the Supreme Court clarified in *United States v. Rahimi*, 602 U.S. 680 (2024), that the challenged firearm regulation does not need to have a "historical twin" to be constitutional; instead, it must be "consistent with the principles that underpin our regulatory tradition." *Id.* at 692 (citation omitted).

After the district court granted Hostettler's motion, and while this appeal was pending, our court revisited the constitutionality of § 922(g)(1) in light of the Supreme Court's precedents in *Bruen* and *Rahimi*.  Given that our pre-*Bruen* cases upholding § 922(g)(1) "omitted any historical analysis," in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), we reexamined the statutory provision's constitutionality under *Bruen*'s analytical framework. *Id.* at 648. Complying with the Supreme Court's "mandate to consult historical analogs," *Williams* concluded that Founding Era practices—which echoed pre-Founding English and colonial practices—revealed a historical tradition of disarming "classes of people [that] posed a great risk of violence." *Id.* at 648, 650.

Against this historical backdrop, we held that § 922(g)(1) was "constitutional on its face and as applied to dangerous people." *Id.* at 662–63.  However, we explained that when the government disarms people on a "class-wide basis," like it does for felons under § 922(g)(1), "individuals must have a reasonable opportunity to prove that they don't fit the class-wide generalization." *Id.* at 661.  For these as applied-challenges, we clarified that the burden rests

with the defendant to demonstrate that they are not dangerous. *Id.* at 662. And when assessing dangerousness, courts are to "make fact-specific" determinations that "tak[e] account of the unique circumstances of the individual, including details of [their] specific conviction[s]." *Id.* at 663. This inquiry requires consideration of "any evidence of past convictions in the record, as well as other judicially noticeable information" or other evidence the defendant submits. *Id.* at 659–60, 663.

In reaching our holding that § 922(g)(1) was constitutional as applied to the defendant in *Williams*, the court focused on the defendant's prior convictions for aggravated robbery and attempted murder as the criminal history that was most probative of the defendant's dangerousness. *Id.* at 662. Those types of crimes, because they require violence against another person, provide "at least strong evidence" that the individual is dangerous. *Id.* at 658. But even where a defendant has committed those types of crimes, we recognized that § 922(g)(1) "might be susceptible to an as-applied challenge" depending on the unique circumstances of the offenses committed. *Id.* at 657.

The court also considered the probative value of other types of crimes, which were not at issue in *Williams*. For crimes that do not involve an "immediate and direct threat of violence" against another person, we recognized they "may nonetheless pose a significant threat of danger" in some circumstances. *Id.* at 659. But for crimes that clearly cause no harm to other individuals or the broader community, we suggested they are unlikely to support a dangerousness determination at all. *Id.* Still, we cautioned that dangerousness determinations cannot be made on a categorical basis because the inquiry is "fact-specific" in nature. *Id.* at 660.

## II.     Hostettler's As-Applied Challenge

With this framework, we turn to Hostettler's case. We review challenges to the constitutionality of a federal statute de novo. *United States v. Morton*, 123 F.4th 492, 495 (6th Cir. 2024).

As Hostettler concedes, the district court's decision cannot stand given our intervening precedent. *Williams*'s analysis conflicts with the district court's in three important ways: *first*, the burden lies with Hostettler, not the government, to show he is not dangerous; *second*, the

court must consider Hostettler's entire criminal history, not just his felony convictions; and *third*, his status on supervised release is potentially relevant. *Williams*, 113 F.4th at 657–58.  Given the new governing precedent, Hostettler asks that the case be remanded to the district court so that he may have the opportunity to carry his burden of showing that § 922(g)(1) is unconstitutional as applied.

We agree that remanding with instructions to apply the proper legal standard is the most appropriate remedy.  When a district court has not applied the correct legal standard in the first instance, remand is the ordinary course.  *Losantiville Country Club v. Comm'r*, 906 F.3d 468, 474 (6th Cir. 2018) (citing *Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982)).  Only in the "small subset of cases where 'the record permits . . . one resolution of the factual issue'" would it be a "waste of judicial resources" to remand the case instead of resolving it ourselves.  *Id.* (first quoting *Pullman-Standard*, 456 U.S. at 292; then quoting *Est. of Hill v. Miracle*, 853 F.3d 306, 317 (6th Cir. 2017)).

Application of that rule counsels in favor of remanding with instructions to apply the proper legal standard here.  In determining that the government failed to carry its burden, the district court reviewed Hostettler's criminal history report prepared by pretrial services, limiting its review to Hostettler's felony record.  But, in this case, those are not the crimes that are most likely to be probative of Hostettler's dangerousness.  Hostettler's criminal history report shows that he has several misdemeanor convictions for assault and domestic violence—which, under *Williams*, are the types of crimes against the person that might provide the strongest evidence of a defendant's dangerousness.  However, the district court did not engage in factfinding as to those crimes, nor was Hostettler provided an opportunity to put forth argument as to why the specific circumstances of his crimes do not prove his dangerousness.  The record before us is limited to Hostettler's criminal history report and excludes information about the unique circumstances of Hostettler's crimes, so we are unable to conclude on this record that "only one resolution" is possible.  *See Losantiville Country Club*, 906 F.3d at 474 (citation omitted).  Accordingly, remand to the district court with instructions to provide Hostettler with "a reasonable opportunity to prove" he is not dangerous, *Williams*, 113 F.4th at 661, and to apply the correct legal standard is the most appropriate remedy.

By contrast, the government argues that we should remand the case with instructions to reinstate Hostettler's indictment, without providing him the opportunity for individualized assessment as contemplated by *Williams*.  But its reasoning is not persuasive given the specific facts and posture of this case.

*First*, the government contends that Hostettler's criminal record clearly establishes his dangerousness, obviating the need for a remand to the district court to consider the issue in the first instance.  Our circuit has indeed considered *Bruen* challenges in which we deemed remand unnecessary.  But Hostettler's case does not fall into the narrow class where the existing record is so conclusive that allowing the defendant to present evidence as to dangerousness is obviously futile.  In those cases, the unique circumstances of the offenses committed—which were contained in the record for review—made it "clear[]" that the defendant fell "within the category of individuals that may be lawfully disarmed."  *United States v. Fordham*, No. 24-1491, 2025 WL 318229, at *5 (6th Cir. Jan. 28, 2025) (explaining that remand is unnecessary where the district court would "[i]ndisputably . . . conclu[de]" the defendant was dangerous); *United States v. Henson*, No. 24-3494, 2025 WL 1009666, at *7 (6th Cir. Apr. 3, 2025); *see also Morton*, 123 F.4th at 500.

Not so here.  This case falls short of the standard we articulated in *Fordham* and *Henson* in part because the only evidence relevant to dangerousness in the existing record is the criminal history report.  That report lists the date, agency, charge, and disposition for each of Hostettler's past convictions—but it contains no information about the underlying circumstances or details of Hostettler's criminal conduct in those convictions.  Without that information, the district court was unable to make the "individualized assessment of dangerousness" that our precedent requires.  *Morton*, 123 F.4th at 500; *see Williams*, 113 F.4th at 663.

The lack of individualized information in the criminal history report also distinguishes this case from others where we have affirmed convictions based on more robust records.  *See, e.g.*, *United States v. White*, No. 24-2064, 2025 WL 2060869, at *3 & n.4 (6th Cir. July 23, 2025); *Henson*, 2025 WL 1009666, at *6–7; *United States v. Craft*, No. 24-1624, 2025 WL 2888040, at *2–3 (6th Cir. Oct. 10, 2025).  Unlike here, those records included the kinds of information usually available at sentencing, like the presentence investigation report and any

additional evidence and arguments the parties chose to submit. At sentencing, the parties have usually reviewed the presentence investigation report, which customarily contains details about the underlying circumstances of a defendant's past offenses. Crucially, sentencing provides the defendant with an opportunity to object to their presentence investigation report, and, if not objected to, details of "prior convictions" contained in the report may be "accept[ed]" as part of the record. *Williams*, 113 F.4th at 662. But based on the record before us in this appeal, which is limited to the criminal history report, we cannot draw a similar conclusion that "the record evidence would have indisputably led the district court to conclude that [the defendant] was dangerous enough to be constitutionally disarmed." *Henson*, 2025 WL 1009666, at *7. Therefore, the most prudent course is for us to remand to the district court to engage in the requisite factfinding, and fulfill the obligations contemplated in *Williams* before ruling on Hostettler's motion to dismiss.

*Second*, the government contends that Hostettler's status on supervised release is dispositive of the constitutional inquiry. The government points to another one of our recent precedents, *United States v. Goins*, 118 F.4th 794 (6th Cir. 2024), as support for the proposition that a defendant's status on parole, probation, or supervised release renders the deprivation of their Second Amendment rights per se constitutional. But *Goins*'s holding does not extend quite so far. Rather, we held that § 922(g)(1) was constitutional as applied to the defendant's "very specific facts." *Id.* at 797. And our holding rested on "[t]hree aspects" in particular: that (1) the defendant had violated a probation condition that "prohibited him from possessing a firearm"; (2) his probationary term was "relatively short" and "for a dangerous crime"; and (3) his "repeated actions" were suggestive of "future dangerous conduct." *Id*. The combined force of those facts, taken together, demonstrated that the defendant had engaged in sufficiently dangerous conduct to justify his temporary disarmament while on probation, and thus, that § 922(g)(1) was constitutional as applied. *Id.*

In *Goins*, we recognized that our historical traditions may justify temporary deprivations of an individual's Second Amendment rights. But we also cautioned that our historical forfeiture laws and pretrial detention practices "may not support disarmament of *any* criminal defendant under *any* criminal justice sentence in *all* circumstances." *Id.* at 804 (emphasis added).

Though we did, indeed, describe the defendant's violation of his probation condition as the "most important[]" factor in our analysis, our holding rested on the grounds that the probation condition was imposed for a dangerous crime and the defendant's past actions suggested he would engage in dangerous conduct again. *Id.* at 804–05. Thus, in *Goins* we implied that at least some nexus may have to exist between the dangerousness of the crime and the restriction imposed. As we do not have a full record before us, we cannot conclude that the "totality of the facts" of Hostettler's case requires us to reach the same conclusion that we did in *Goins*. *Goins*, 118 F.4th at 805. Again, the district court is best equipped to engage in factfinding regarding the reasons for Hostettler's supervised release, and whether they satisfy the requirements of the *Goins* test.

Given the undeveloped record here, without remand, we risk running afoul of *Williams*'s requirement that an individual be provided with a reasonable opportunity to show why § 922(g)(1) is not constitutional as applied.

## CONCLUSION

For the foregoing reasons, we vacate and remand with instructions to reconsider the defendant's motion to dismiss the indictment consistent with current circuit precedent.